ED T. GRIFFIN D/B/A ED T. GRIFFIN BUILDERS v. JAMES H. SWEET, JR. AND WIFE, DEBRA H. SWEET

No. COA94-716

(Filed 5 September 1995)

**1. Accord and Satisfaction § 6 (NCI4th)— sufficiency of evidence of accord**

The settlement agreement reached by the parties, the terms and conditions of which were announced in open court and recorded by the court reporter, constituted an accord, and defendants could not successfully claim that there was no agreement where defendants were aware their attorneys were conducting settlement negotiations with opposing counsel; defendant husband, a college graduate, and defendant wife were present in the courtroom with their attorneys when the judge outlined the terms of the settlement agreement and asked counsel to inform him of any variations in the terms; and both of defendants' attorneys testified that their clients were fully informed of and agreed to the terms of the settlement agreement.

**Am Jur 2d, Accord and Satisfaction §§ 5, 33 et seq.**

**2. Accord and Satisfaction § 8 (NCI4th)— sufficiency of evidence of satisfaction**

The evidence was sufficient to show satisfaction, despite defendants' failure to negotiate plaintiff's checks, where it tended to show that plaintiff fully performed as required under the settlement agreement by releasing the lien on defendants' property and making two $5,000 installment payments within the time required and was thereby denied use of the money for other purposes; defendants personally returned plaintiff's ladder to plaintiff's attorney and, while at his office, requested the first payment; when they later went to collect the check, they objected to its being made out to their attorney; the checks tendered by plaintiff pursuant to the settlement agreement were ultimately forwarded to defendants' attorney who, acting on their behalf, accepted and endorsed both checks; and defendants did not instruct their attorney to return the checks to plaintiff until eight months after the first check had been issued and received and after plaintiff had released his lien on defendant's property.

**Am Jur 2d, Accord and Satisfaction §§ 18-22.**

GRIFFIN v. SWEET

[120 N.C. App. 166 (1995)]

**Modern status of rule that acceptance of check purporting to be final settlement of disputed amount constitutes accord and satisfaction. 42 ALR4th 12.**

**Creditor's retention without negotiation of check purporting to be final settlement of disputed amount as constituting accord and satisfaction. 42 ALR4th 117.**

Appeal by defendants from judgment entered 28 January 1994 by Judge Cyrus Grant in Halifax County Superior Court. Heard in the Court of Appeals 22 March 1995.

*Dill, Fountain, Hoyle & Pridgen, L.L.P., by William S. Hoyle, for plaintiff-appellee.*

*Wood & Francis, PLLC, by Charles T. Francis, for defendant-appellants.*

McGEE, Judge.

In the summer of 1989, defendants James H. Sweet, Jr. and wife Debra H. Sweet contracted with plaintiff Ed T. Griffin, d/b/a Ed T. Griffin Builders to construct a home in Halifax County, North Carolina. Defendants subsequently obtained a construction loan through Centura Bank f/k/a Peoples Bank, and as required by the lender, Griffin and his wife signed a personal guaranty for the construction loan. Plaintiff began work on the residence in early 1990.

During the summer, a dispute arose between the parties concerning the construction. Defendants notified Centura Bank that plaintiff was no longer authorized to make construction draws on the account. Plaintiff had the house appraised, determined the percentage of completion and filed a claim of lien against the property for the balance due on the contract. He also filed a lawsuit against defendants alleging breach of contract to collect the balance due for the completed portion of construction and to perfect his materialman's lien. Defendants filed an answer and counterclaim alleging the plaintiff breached the contract by failing to (1) construct the house in accordance with the contract, (2) comply with the state building code, and (3) perform the construction in a workmanlike manner.

A jury was selected and impaneled and plaintiff began presenting evidence in January 1993. During the second day of the trial, testimony was suspended and with the encouragement of the judge, settlement negotiations began. After several hours of negotiations in the

judge's chambers with the judge and attorneys for both parties present, a settlement was reached. The judge then instructed all parties and their attorneys to return to the courtroom where he dismissed the jury. He then stated, "I am going to recite what I consider to be the settlement, and if it varies from what you perceive the settlement to be, counsel, you should inform me." After the judge read into the record his understanding of the settlement agreement, attorneys for both parties were given an opportunity to include additional terms of the agreement which had been omitted by the judge, and to object to any variations from the terms which had been agreed upon. Although some terms were added, no objections were made by either side.

Under the settlement agreement, plaintiff agreed to pay $10,000 to defendants, $5,000 due within ten days and $5,000 due on or before 1 June 1993, and to release the lien on defendants' property. In exchange, defendants agreed to return a ladder belonging to plaintiff within ten days, and to indemnify the plaintiff and hold him harmless from any payment that he might be required to make to Centura Bank as a result of plaintiff's guaranty of the construction loan. The parties agreed to sign a consent judgment to be held by plaintiff's counsel until the conditions of the settlement agreement were met. The consent judgment was to be filed only if the conditions were not met by 2 June 1993.

Plaintiff complied with the terms of the settlement agreement by cancelling the lien on defendants' property and making the two installment payments of $5,000 within the time required. The checks were accepted by defendants' attorney, but were never negotiated by defendants. The defendants returned plaintiff's ladder as required, but refused to indemnify him for any payment he might be required to pay pursuant to the construction loan guaranty.

Plaintiff filed a supplemental complaint in November 1993 against defendants for breach of the settlement agreement. He alleged the agreement reached during the January 1993 trial, along with defendants' attorney's acceptance of plaintiff's installment payments, constituted accord and satisfaction.

In response to plaintiff's supplemental complaint, defendants alleged they never understood the settlement and did not agree to various provisions of the settlement agreement. Defendants argue that although the settlement agreement was read in court, they were not asked whether they understood or accepted its terms. They further argue that their counsel asked them for information during the

settlement negotiations but never discussed with them the terms of the settlement agreement, in particular the indemnification provision. Defendants contend it was not until they received a written copy of the settlement agreement and consulted with a North Carolina State University staff attorney that they understood the legal meaning of indemnification. They contacted their attorney by letter in March and April 1993 and "repudiated the purported agreement and stated that they did not understand the entire agreement . . . ." Defendants contend they never accepted compensation from plaintiff because they refused to cash the checks tendered by him and accepted by their original attorney. Defendants retained a new attorney who returned the non-negotiated checks to plaintiff's attorney in October 1993, eight months after the first check had been issued and received by defendants' original attorney.

Plaintiff filed a motion for summary judgment pursuant to N.C.R. Civ. P. 56 and in January 1994, at the conclusion of a hearing held on the motion, summary judgment was granted. Defendants appeal from that judgment.

The issue for this Court is whether the trial court properly granted summary judgment in favor of plaintiff when it found that there was no genuine issue of material fact as to accord and satisfaction. We hold summary judgment was proper and therefore affirm the trial court's judgment.

On a motion for summary judgment "the movant has the burden of showing, based on pleadings, depositions, answers, admissions, and affidavits, that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Taylor v. Ashburn*, 112 N.C. App. 604, 606, 436 S.E.2d 276, 278 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). "[A] genuine issue is one which can be maintained by substantial evidence." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971) (quoting 3 Barron and Holtzoff, *Federal Practice and Procedure* 1234 (Wright Ed., 1958)). An issue is material if the facts alleged are of "such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail." *Id.* Plaintiff contends there is no genuine issue of material fact with respect to an accord and satisfaction between the parties and, therefore, he is entitled to judgment as a matter of law.

Accord and satisfaction is "a method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by

substituting for such contract or cause of action an agreement for the satisfaction thereof, and an execution of such substitute agreement." *Prentzas v. Prentzas*, 260 N.C. 101, 103, 131 S.E.2d 678, 680 (1963). "The accord is the agreement, and the satisfaction is the execution or performance of such agreement." *Bizzell v. Bizzell*, 247 N.C. 590, 601, 101 S.E.2d 668, 676, *cert. denied*, 358 U.S. 888, 3 L. Ed. 2d 115 (1958), *reh'g denied*, 358 U.S. 938, 3 L. Ed. 2d 310 (1959). "Agreements are reached by an offer by one party and an acceptance by the other . . . even though the legal effect of the acceptance may not be understood." *Prentzas*, 260 N.C. at 104, 131 S.E.2d at 681.

[1] The record reveals defendants were aware their attorneys were conducting settlement negotiations with opposing counsel, and the defendants had contact with their attorneys at various times during that process. Further, Mr. Sweet, a college graduate, and Mrs. Sweet were present in the courtroom with their attorneys when the judge outlined the terms of the settlement agreement and asked counsel to inform him of any variations in the terms. Both of defendants' attorneys testified that their clients were fully informed of and agreed to the terms of the settlement agreement. Merely because defendants have second thoughts regarding their agreement to indemnify plaintiff now that they understand the legal effect of indemnification is irrelevant to the existence of the agreement. *See Prentzas*, 260 N.C. at 104, 131 S.E.2d at 681.

Upon review of the record, we conclude that the settlement agreement reached by the parties, the terms and conditions of which were announced in open court and recorded by the court reporter, constitutes an accord.

[2] As to the issue of satisfaction, defendants argue there was no satisfaction since they personally did not cash plaintiff's checks. We disagree.

Plaintiff fully performed as required under the settlement agreement. He released the lien on defendants' property. In addition, he made two $5,000 installment payments within the time required by the agreement, and was thereby denied use of the money for other purposes. By his performance of the terms, plaintiff relied on the agreement to his detriment.

Contrary to their claims, defendants' actions demonstrated their intent to satisfy the terms of the settlement agreement. There is evidence they personally returned the ladder to plaintiff's attorney, and

while at his office, requested the first payment. The check was not available at that time, so they returned on another occasion to collect the check. On that occasion, they left the attorney's office without the check because they objected to the check being made out to their attorney. These actions contradict defendants' claim that they never intended to accept the terms of the agreement.

The checks tendered by plaintiff pursuant to the settlement agreement were ultimately forwarded by certified mail to defendants' attorney who, acting on their behalf, accepted and *endorsed* both $5,000 checks. Since it is presumed that an attorney employed to prosecute an action to judgment is also authorized to receive the money demanded, *Harrington v. Buchanan*, 222 N.C. 698, 700, 24 S.E.2d 534, 536 (1943), defendants' attorney was acting within the scope of his authority when he accepted plaintiff's checks. Defendants did not instruct their attorney to return the checks to plaintiff until eight months after the first check had been issued and received, and after plaintiff had released his lien on the defendants' property. On these facts, we conclude that there was satisfaction, despite defendants' failure to negotiate the checks. *See FCX, Inc. v. Oil Co.*, 46 N.C. App. 755, 759, 266 S.E.2d 388, 391 (1980).

Although the existence of accord and satisfaction is generally a question of fact, "where the only reasonable inference is existence or non-existence, accord and satisfaction is a question of law and may be adjudicated by summary judgment when the essential facts are made clear of record." *Construction Co. v. Coan*, 30 N.C. App. 731, 737, 228 S.E.2d 497, 501, *disc. review denied*, 291 N.C. 323, 230 S.E.2d 676 (1976). The only reasonable inference to be drawn from the record in the case before this Court is that accord and satisfaction exist. Since accord and satisfaction operate as a bar to the assertion of any claims on the underlying contract, plaintiff is entitled to judgment as a matter of law. The trial court properly granted summary judgment for plaintiff and the judgment of the trial court is affirmed.

Affirmed.

Judges JOHNSON and COZORT concur.